IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00911-WYD-CBS

MERCURY COMPANIES, INC., AMERICAN HERITAGE TITLE AGENCY, INC. D/B/A FIRST AMERICAN HERITAGE TITLE COMPANY OF DENVER, SECURITY TITLE GUARANTY CO., TITLE AMERICA, INC., AND UNITED TITLE COMPANY, INC.

    Plaintiffs,

v.

THE FIRST AMERICAN CORPORATION AND FIRST AMERICAN TITLE INSURANCE COMPANY

    Defendants.

---

THE FIRST AMERICAN CORPORATION AND FIRST AMERICAN TITLE INSURANCE COMPANY,

    Counterclaimants,

v.

MERCURY COMPANIES, INC., AMERICAN HERITAGE TITLE AGENCY, INC. D/B/A FIRST AMERICAN HERITAGE TITLE COMPANY OF DENVER, SECURITY TITLE GUARANTY CO., TITLE AMERICA, INC., UNITED TITLE COMPANY, INC., AND FIDELITY NATIONAL FINANCIAL, INC.

    Counterdefendants.

**Second Amended Complaint and Jury Demand**

Plaintiffs, Mercury Companies, Inc. ("Mercury"), American Heritage Title Agency, Inc. d/b/a First American Heritage Title Company of Denver ("Heritage Title"), Security Title Guaranty Co. ("Security Title"), Title America, Inc. ("Title America"), and United Title Company, Inc. ("United Title") (collectively, "Plaintiffs"), by and through their undersigned attorneys, for their Complaint against Defendants, The First American Corporation ("FACO") and First American Title Insurance Company ("FATICO"), allege as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment and breach of contract.  FACO and FATICO entered into several agreements with Plaintiffs, under which the parties agreed that Plaintiffs would be FACO's and FATICO's exclusive agents in the State of Colorado.  In addition, FACO agreed to purchase 15,000 shares of Mercury Series A Preferred Stock, if that stock was "put" to it.  Despite these agreements, FACO and FATICO have used – and continue to use – multiple agents other than Plaintiffs in Colorado and have taken steps to sell their insurance policies directly to consumers in Colorado.  Moreover, FACO has failed to purchase the Series A Preferred Stock despite the fact that Mercury properly put the 15,000 shares of stock to it.  Accordingly, Plaintiffs bring this action seeking a declaratory judgment, compensatory damages, costs, attorneys' fees, a constructive trust, an injunction, and such other relief as may be allowed by law.

## PARTIES

2.      Mercury is a Colorado corporation with its principal place of business in Denver, Colorado.

3.      Heritage Title is a Colorado corporation with its principal place of business in

2

Denver, Colorado.

4. Security Title is a Colorado corporation with its principal place of business in Denver, Colorado.

5. Title America is a Colorado corporation with its principal place of business in Lakewood, Colorado.

6. United Title is a Colorado corporation with its principal place of business in Denver, Colorado.

7. FACO is a California corporation with its principal place of business in California. At all relevant times, FACO was doing business in the State of Colorado.

8. FATICO is a California corporation with its principal place of business in California. At all relevant times, FATICO was doing business in the State of Colorado.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and amount in controversy: neither defendant is incorporated, resides, or has a principal place of business in the same state as any of Plaintiffs, and the amount in controversy (exclusive of interest and costs) exceeds the sum of $75,000.00.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims occurred in this district.

## GENERAL ALLEGATIONS

I. **The Mercury Companies' Business.**

11. Mercury is a holding company. Until August 5, 2008, its wholly-owned operating subsidiaries included Heritage Title, Security Title, Title America, and United Title (collectively,

3

the "Colorado Subsidiaries").[1] Mercury and its Colorado Subsidiaries are collectively referred to herein as Plaintiffs.

12. The Colorado Subsidiaries provide title insurance and escrow services throughout the country. Their income is derived primarily through selling title insurance policies and performing title and closing services for residential and commercial real estate transactions.

## II.     Plaintiffs Are Agents of Defendants

13. Plaintiffs are agents for Defendant FATICO, one of the world's largest title insurers. Defendant FATICO is a subsidiary of Defendant FACO.

14. On December 29, 2000, Plaintiff, United Title Companies, Inc. n/k/a Mercury and Defendant FACO, entered into an Agreement (the "Agreement").

15. Under the Agreement, FACO and its affiliates agreed to use Plaintiffs as their exclusive agents in the State of Colorado. In particular, Paragraph 9.1 provides:

> **9.1     Colorado Agent**. During the term of this Agreement, the Company [Mercury] and its subsidiaries shall be the exclusive agent of FACO in the State of Colorado.

(Agreement at ¶ 9.1.)

16. In addition, Mercury agreed to use FACO exclusively to issue title insurance policies:

> **9.2     Exclusive Underwriter**. During the term of this Agreement and for so long thereafter as FACO or an affiliate thereof owns shares of stock of the Company [Mercury], the Company and its subsidiaries will issue policies of title insurance exclusively on FACO or its designated affiliates; provided, however, that the Company and its subsidiaries shall have the right to issue policies of title insurance on other underwriters at the written request of a customer.

---

[1] On August 5, 2008, Mercury sold the stock of the Colorado Subsidiaries to FNF Security Acquisition, Inc.

4

(*Id.* ¶ 9.2.)

17.     To effectuate Paragraph 9 of the Agreement, Mercury and FACO agreed to execute (and cause their subsidiaries to execute) an Agreement of Amendment to amend the preexisting underwriting agreements[2] so that those agreements reflected the exclusivity provisions contained in Paragraph 9 of the Agreement. (*Id.* ¶ 4.2(e).)

18.     In accordance with this provision, the Colorado Subsidiaries each executed and delivered to FATICO a separate Agreement of Amendment (together, the "Agreements of Amendment").

19.     Under the Agreements of Amendment, the parties amended the Underwriting Agreements to provide that Plaintiffs could not represent any competitor of FACO in issuing title insurance policies, unless the customer specifically requested, in writing, that Plaintiffs issue policies of title insurance on underwriters other than FACO.

20.     In addition, pursuant to the Agreements of Amendment, the term of the Underwriting Agreements was extended to match the term of the Agreement. Therefore, the term of each of the Underwriting Agreements was changed to be in effect until the later to occur of January 8, 2011 or the date on which FACO no longer owns any shares of the capital stock of Mercury.

21.     Moreover, under the Agreements of Amendment, the parties specifically agreed that Plaintiffs would be FACO's and FATICO's exclusive agents in the State of Colorado.

---

[2]  The pertinent preexisting underwriting agreements include an Underwriting Agreement between Heritage Title and FATICO, an Underwriting Agreement between Security Title and FATICO, and an Underwriting Agreement between Title America and FATICO. These underwriting agreements are referred to collectively herein as the "Underwriting Agreements."

22. Despite FACO's and FATICO's express agreement that Plaintiffs would be their exclusive agents in the State of Colorado, FACO and FATICO have used, and are continuing to use, multiple agents in Colorado other than Plaintiffs. FACO and FATICO have further taken steps to begin selling title insurance policies directly to consumers in Colorado.

### III.   Mercury Properly Puts Preferred Stock to FACO

23. In addition, under the Agreement, Mercury had the right (the "Put Right"), exercisable by written notice to FACO (the "Put Notice"), to sell to FACO, and FACO agreed to purchase, newly issued shares of Preferred Stock of Mercury.  (Pursuant to the Series B Preferred Stock Purchase Agreement between Mercury and FATICO dated June 23, 2006, Mercury amended its Articles of Incorporation to redesignate the Preferred Stock as Series A Non-Voting Preferred Stock ("Series A Preferred Stock").)

24. Under the Agreement, the maximum number of shares of Preferred Stock to be sold to FACO pursuant to such exercise of the Put Right was to be calculated by subtracting from 20,000 the number of shares of Preferred Stock held by FACO as of the date of the Put Notice.  The Put Notice was to (a) designate the number of shares of Preferred Stock to be sold to FACO pursuant to such exercise (the "Put Shares"); (b) fix the date and time (the "Put Time") of settlement of the payment of the Put Shares (the "Put Closing") which was to be a Business Day (as defined in the Agreement) not less than 30 nor more than 90 days after the date of the Put Notice.

25. Pursuant to the Agreement, the aggregate purchase price for the Put Shares to be sold was to be equal to the product of $1,000 and the number of Put Shares to be sold at the Put Closing (the "Put Price").

26. On May 13, 2008, Mercury delivered to FACO a Put Notice scheduling a closing on June 12, 2008, at which time Mercury intended to deliver to FACO 15,000 shares of Series A Preferred Stock, and accept from FACO $15,000,000 in payment for the Put Shares.

27. By letter dated May 30, 2008, FACO claimed that the Put Notice was defective and it was, therefore, not obligated to comply with the Put Notice.

28. On June 6, 2008, Mercury responded to FACO's May 30, 2008 letter. In its response, Mercury demanded that FACO comply with the Put Notice, explaining that Section 2 of the Put Notice was an unequivocal and proper Put Notice consistent with Mercury's rights and obligations under the Agreement.

29. Thereafter, Mercury and FACO met to discuss, among other things, the Put Notice.

30. Mercury understood that the parties had reached an agreement and, upon documenting that agreement, FACO would comply with its obligations under the Put Notice. The parties, however, were not able to document the agreement, and the June 12, 2008 date for closing on the Put Notice passed.

31. Therefore, by letter dated July 2, 2008, Mercury rescheduled the closing on Mercury's May 13, 2008 Put Notice for July 8, 2008.

32. In addition, in the July 2, 2008 letter, anticipating that FACO would continue to assert that the May 13, 2008 Put Notice was defective (and solely to eliminate any argument with respect to the effectiveness of Mercury's Put Notice), Mercury delivered a second Put Notice to FACO, scheduling a closing on August 1, 2008 (the "Second Put Notice").

33. FACO did not close on Mercury's original Put Notice on July 8, 2008.

7

34. Moreover, FACO did not close on the Second Put Notice on August 1, 2008, contending that FACO "has no obligation under any agreement with Mercury . . . to comply with the Put Notice. . ."

35. All conditions precedent have occurred, been performed, or been waived.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract Re Exclusivity Provision Against FACO)**

36. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 35 above as if fully set forth herein.

37. On December 29, 2000, Defendant FACO entered into the Agreement with Mercury.

38. Under the Agreement, FACO is obligated to use Plaintiffs as its exclusive agents in the State of Colorado, for the term of the Agreement.

39. FACO has repeatedly and materially breached the Agreement, and continues to breach the Agreement, by using and/or appointing multiple agents in Colorado, other than Plaintiffs during the term of the Agreement.

40. As a direct result of FACO's multiple and continuing breaches, Plaintiffs have suffered damages in an amount to be determined at trial.

41. Mercury is entitled to all costs, expenses, and reasonable attorneys' fees incurred in this action.

### SECOND CLAIM FOR RELIEF
**(Breach of Contract Re Exclusivity Provision Against FACO and FATICO)**

42. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 41 above as if fully set forth herein.

8

43. On or about December 8, 2001, Defendants FACO and FATICO entered into Agreements of Amendment with Mercury, Heritage, Security, and Title America.

44. Under those Agreements of Amendment and the Underwriting Agreements they amended, FACO and FATICO agreed that Plaintiffs would be the exclusive agents of FATICO and its affiliates in the State of Colorado, for the term of the Agreement.

45. FACO and FATICO have repeatedly and materially breached the Agreements of Amendment and the Underwriting Agreements, and continue to breach those agreements by using and/or appointing multiple agents in Colorado other than Plaintiffs during the term of the Agreement.

46. As a direct result of Defendants' multiple and continuing breaches, Plaintiffs have suffered damages in an amount to be determined at trial.

47. Plaintiffs are entitled to all costs, expenses, and reasonable attorneys' fees incurred in this action.

### THIRD CLAIM FOR RELIEF
(Permanent Injunction)

48. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 47 above as if fully set forth herein.

49. An injunction preventing FACO, FATICO, and their affiliates from using and/or appointing any agents in Colorado other than Plaintiffs for the remaining term of the Agreement, is necessary to prevent future harm to Mercury.

50. Plaintiffs will achieve actual success on the merits of their breach of contract claims.

51. Irreparable harm will result to Plaintiffs unless the injunction is issued because,

by its nature, the exclusivity agreement affects what businesses will occupy the Colorado market and what business relationships with the parties' competitors and customers can or cannot be established.

52. The threatened injury to Plaintiffs outweighs the harm that the injunction may cause to FACO, FATICO, and their affiliates.

53. The injunction, if issued, will not adversely affect the public interest.

54. Plaintiffs are also entitled to all costs, expenses, and reasonable attorneys' fees incurred in this action.

## FOURTH CLAIM FOR RELIEF
### (Declaratory Judgment Re Put Agreement Against FACO)

55. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 54 above as if fully set forth herein.

56. Under the Agreement, FACO was obligated to purchase newly issued shares of Series A Preferred Stock of Mercury, if that stock was put to it.

57. On May 13, 2008, Mercury delivered to FACO a Put Notice scheduling a closing on June 12, 2008 (which closing was later rescheduled to July 8, 2008), at which time Mercury intended to deliver to FACO 15,000 shares of Series A Preferred Stock and accept from FACO $15,000,000 in payment for the Put Shares.

58. On July 2, 2008, Mercury delivered to FACO a Second Put Notice scheduling a closing on August 1, 2008.

59. FACO has taken the position that its obligations under the Agreement have terminated and, therefore, it is not obligated to comply with the Put Notice or Second Put Notice.

60. There exists an actual and substantial controversy between Mercury and FACO as

10

to whether FACO was obligated to purchase the 15,000 shares of Mercury Series A Preferred Stock.

61. A declaration from this Court will resolve the controversy.

62. Accordingly, pursuant to F.R.C.P. 57, Mercury is entitled to a judgment declaring that FACO is required to purchase the 15,000 shares of Series A Preferred Stock from Mercury.

63. Given the substantial harm that is being caused by FACO's failure to purchase the Series A Preferred Stock, pursuant to F.R.C.P. 57, Mercury requests a speedy hearing on this claim.

### FIFTH CLAIM FOR RELIEF
### (Breach of Contract Re Put Agreement Against FACO)

64. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 63 above as if fully set forth herein.

65. On December 29, 2000, Defendant FACO entered into the Agreement with Mercury.

66. Under the Agreement, FACO was obligated to purchased newly issued shares of Series A Preferred Stock of Mercury, if Mercury put that stock to FACO.

67. Mercury delivered to FACO a Put Notice and Second Put Notice demanding that FACO purchase 15,000 shares of Series A Preferred Stock.

68. FACO has materially breached the Agreement by failing and refusing to purchase the Series A Preferred Stock that Mercury put to it.

69. As a direct result of FACO's breach, Mercury has suffered damages in an amount to be determined at trial.

70. Mercury is entitled to all costs, expenses, and reasonable attorneys' fees incurred

in this action.

## SIXTH CLAIM FOR RELIEF
**(Breach of 2001 Agreements of Amendment Against FACO and FATICO, Brought On Behalf of Colorado Subsidiaries Only)**

71. This claim for relief is brought on behalf of the following Plaintiffs: American Heritage Title Agency, Inc. d/b/a First American Heritage Title Company of Denver, Security Title Guaranty Title Co., Title America, Inc., and United Title Company, Inc. ("the Colorado Subsidiaries").

72. The Colorado Subsidiaries incorporate by reference the allegations of paragraphs 1 through 70 as if fully set forth herein.

73. On or about January 8, 2001, Defendants FACO and FATICO entered into Agreements of Amendment to the Underwriting Agreements with Heritage, Security, and Title America.

74. Under those Agreements of Amendment and the Underwriting Agreements they amended, FACO and FATICO agreed that Plaintiffs would be the exclusive title insurance agents of FATICO and its affiliates in the State of Colorado, for the term of the Agreement.

75. The Agreements of Amendment give the Colorado Subsidiaries an exclusive right to sell Defendants' title insurance policies to consumers in Colorado to the exclusion of other agents, as well as to the exclusion of FATICO and its affiliates.

76. As described above, FACO and FATICO have repeatedly and materially breached the Agreements of Amendment and the Underwriting Agreements.

77. FACO and FATICO have breached and have indicated that they will continue to breach the Agreements of Amendment by selling their title insurance policies (or causing them to

12

be sold) directly to consumers in Colorado.

78.     On information and belief, FACO and FATICO have already taken steps to establish direct operations in Colorado.

79.     As a direct result of Defendants' actions, the Colorado Subsidiaries have and will suffer damages in an amount to be determined at trial.

80.     Plaintiffs are entitled to all costs, expenses, and reasonable attorneys' fees incurred in this action.

### SEVENTH CLAIM FOR RELIEF
**(Permanent and Preliminary Injunction Against FACO and FATICO for Breach of 2001 Agreements of Amendment, Brought On Behalf of Colorado Subsidiaries Only)**

81.     This claim for relief is brought on behalf of the following Plaintiffs: American Heritage Title Agency, Inc. d/b/a First American Heritage Title Company of Denver, Security Title Guaranty Title Co., Title America, Inc., and United Title Company, Inc. ("the Colorado Subsidiaries").

82.     The Colorado Subsidiaries incorporate the allegations of paragraphs 1 through 80 as if fully set forth herein.

83.     An injunction preventing FACO, FATICO, and their affiliates from selling title insurance policies directly to consumers in Colorado for the remaining term of the Agreement, is necessary to prevent future harm to the Colorado Subsidiaries.

84.     Plaintiffs will achieve actual success on the merits of their breach of contract claims.

85.     Irreparable harm will result to Plaintiffs unless the injunction is issued because, by its nature, the exclusivity agreement affects what businesses will occupy the Colorado market

and what business relationships with the parties' competitors and customers can or cannot be established.

86. The threatened injury to Plaintiffs outweighs the harm that the injunction may cause to FACO, FATICO, and their affiliates.

87. The injunction, if issued, will not adversely affect the public interest.

88. Plaintiffs are also entitled to all costs, expenses, and reasonable attorneys' fees incurred in this action.

## PRAYER FOR RELIEF

ACCORDINGLY, Plaintiffs pray for entry of judgment in its favor and against Defendants as follows:

    a. For entry of judgment against Defendants for all actual and compensatory damages incurred by Plaintiffs.

    b. For injunctive relief, enjoining Defendants from using and/or appointing any agents in Colorado other than Plaintiffs, for the remaining term of the Agreement.

    c. For injunctive relief, enjoining Defendants and their affiliates from selling (or causing to be sold) their title insurance policies directly to consumers in Colorado.

    d. For a declaration that FACO was obligated to purchase the 15,000 shares of Mercury Series A Preferred Stock.

    e. For a constructive trust attaching to monies that Defendants will continue to receive after a judgment is entered in this case, from

14

    Defendants' existing agreements with other agents in Colorado in violation of the Agreement.

f. For all costs, expenses, and reasonable attorneys' fees incurred by Plaintiffs in this action.

g. For pre- and post-judgment interest.

h. For such other and further relief as this Court deems proper.

\

Respectfully submitted, September 18, 2008.

        BROWNSTEIN HYATT FARBER & SCHERCK LLP

        */s/ Jeanine M. Anderson*
        Lisa Hogan
        Jeanine M. Anderson
        Christopher C. Zenisek
        410 Seventeenth Street, Suite 2200
        Denver, CO 80202
        Telephone: 303-223-1100
        Fax: 303-223-1111
        e-mail: lhogan@bhfs.com
        e-mail: janderson@bhfs.com
        e-mail: czenisek@bhfs.com

        *Attorneys for Plaintiff Mercury Companies, Inc.*

        BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP

        */s/ Sundeep K. Addy*
        Donald E. Scott
        Sean C. Grimsley
        Sundeep K. (Rob) Addy
        1899 Wynkoop St., 8th Fl.
        Denver, CO 80202
        Telephone: 303-592-3121
        Fax: 303-592-3140
        e-mail: donald.scott@bartlit-beck.com
        e-mail: sean.grimsley@bartlit-beck.com
        e-mail: rob.addy@bartlit-beck.com

        *Attorneys for Plaintiffs American Heritage Title Agency, Inc. d/b/a First American Heritage Title Company of Denver, Security Title Guaranty Co., Title America, Inc., and United Title Company, Inc.*